Citation Nr: 1214072 
Decision Date: 04/17/12 Archive Date: 04/27/12

DOCKET NO. 07-09 180 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Reno, Nevada


THE ISSUES

Entitlement to a rating in excess of 10 percent for lichen planus and nummular eczema, to include a compensable rating prior to July 10, 2007.


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

A. M. Clark, Counsel






INTRODUCTION

The Veteran served on active duty from October 1984 to December 2004. 

These matters come before the Board of Veterans' Appeals (BVA or Board) from an October 2005 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Reno, Nevada. 

The Veteran testified before the undersigned Veteran's Law Judge in February 2008. A transcript of the hearing is of record. 

This case was initially before the Board in October 2008, when a service connection claim for chronic elevated triglycerides was denied. Claims for increased ratings for his service-connected thoracolumbar strain with disk disease and osteoarthritis, his cervical spine, hypothyroidism, right fifth metatarsal fracture residuals, and lichen planus and nummular eczema were remanded for further development. In November 2010, the Board denied claims for increased ratings for his residuals of a fracture to the right fifth metatarsal, thoracolumbar strain with disk disease and cervical spine. A claim for an increased rating for hypothyroidism was granted. 

The Veteran's claim for an increased rating for his lichen planus and nummular eczema was remanded so that additional VA treatment records could be obtained, and the Veteran could be afforded a VA examination during the winter months. Although a May 2011 VA examination was initially completed, a subsequent November 2011 was also obtained. The Board finds that the requested development has been completed. 


FINDINGS OF FACT

Throughout the entire time on appeal, the Veteran's lichen planus and nummular eczema affects more than 5 percent but less than 20 percent of his body; and, intensive light therapy or systemic therapy required for a total duration of six weeks or more, but not constantly, during the past 12-month period has not been demonstrated.
 
CONCLUSIONS OF LAW

1. Prior to July 10, 2007, the criteria for a rating of 10 percent for lichen planus and nummular eczema had been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2002 & Supp. 2011); 38 C.F.R. §§ 4.1- 4.14, 4.27, 4.118, Diagnostic Codes (DCs) 7806-7822 (2011).

2. Throughout the appeal period, the criteria for a rating in excess of 10 percent for lichen planus and nummular eczema have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2002 & Supp. 2011); 38 C.F.R. §§ 4.1- 4.14, 4.27, 4.118, DCs 7806-7822 (2011).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Assist and Notify

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2011).

Proper notice from VA must inform the claimant of any information and medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. Quartuccio v. Principi, 16 Vet. App. 183 (2002). This notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

In addition, the notice requirements of the VCAA apply to all five elements of a service-connection claim, including: (1) veteran status; (2) existence of a disability; (3) a connection between the Veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Further, this notice must include information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. Id. at 486. 

The Veteran's increased rating claims arise from his disagreement with the initial evaluations following the grant of service connection. Courts have held that once service connection is granted the claim is substantiated, and additional notice is not required and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). Therefore, no further notice is needed under VCAA.

As to VA's duty to assist, the RO associated the Veteran's VA treatment records. The Veteran also submitted private treatment records. No outstanding evidence has been identified by the Veteran or his representative.

Further, as noted, the Veteran was provided an opportunity to set forth his contentions at a February 2008 hearing before the undersigned. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the Court held that 38 C.F.R. 3.103(c)(2) requires that the RO Decision Review Officer or Veteran's Law Judge (VLJ) who chairs a hearing fulfill two duties to comply with the above regulation. These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. 

Here, the undersigned VLJ identified the issue on appeal. The VLJ sought to identify any pertinent evidence not currently associated with the claims folder that might have been overlooked or was outstanding that might substantiate the claim. The nature of his overall symptomatology was discussed, to include the assertion that his skin disability was worse in the winter. Moreover, the appellant has neither asserted that VA failed to comply with 38 C.F.R. 3.103(c)(2) nor identified any prejudice in the conduct of the hearing. By contrast, the hearing focused on the elements necessary to substantiate the claim and the appellant, through his testimony, demonstrated that he had actual knowledge of the elements necessary to substantiate his claim for benefits. As such, the Board finds that, consistent with Bryant, the VLJ complied with the duties set forth in 38 C.F.R. 3.103(c)(2) and that the Board can adjudicate the claim based on the current record.

The Veteran was also afforded VA examinations in June 2005, July 2007, June 2010, May 2011 and November 2011. Although it does not appear that the June 2005 or July 2007 VA examiners reviewed the Veteran's claims file, the Board finds the above VA examinations to be thorough and adequate upon which to base a decision with regard to the Veteran's claims. See Nieves- Rodriguez v. Peake, 22 Vet. App. 295 (2008) (the probative value of a medical opinion comes from when it is the factually accurate, fully articulated, and sound reasoning for the conclusion, not the mere fact that the claims file was reviewed). The VA examiners personally interviewed and examined the Veteran, including eliciting a history from the Veteran, and provided the information necessary to evaluate his disability under the applicable rating criteria. The more recent examinations in 2010 and 2011 included a review of the claims file. The last examination was also conducted in the winter, which is when the Veteran alleges his skin disorder is at its worse. Accordingly, the Board finds that VA's duty to assist, with respect to obtaining a VA examination with respect to the issue on appeal, has been met. 38 C.F.R. § 3.159(c)(4). 

The Board concludes that all the available records and medical evidence have been obtained in order to make adequate determinations as to these claims. Hence, no further notice or assistance is required to fulfill VA's duty to assist in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd, 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002).

II. Increased Ratings

Disability evaluations are determined by the application of a schedule of ratings which is based on average impairment of earning capacity. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. 38 C.F.R. § 4.1 (2011). Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. Part 4 (2011). 

However, the Board has been directed to consider only those factors contained wholly in the rating criteria. See Massey v. Brown, 7 Vet. App. 204, 208 (1994); but see Mauerhan v. Principi, 16 Vet. App. 436 (2002) (finding it appropriate to consider factors outside the specific rating criteria in determining level of occupational and social impairment). 

Where there is a question as to which of two separate evaluations shall be applied, the higher evaluation will be assigned if the disability more closely approximates the criteria required for that particular rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2011). When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability, such doubt will be resolved in favor of the Veteran. 38 C.F.R. § 4.3 (2011). 

At the outset, the Board notes that the Veteran is appealing the initial disability ratings assigned for his lichen planus and nummular eczema. As such, the claims require consideration of the entire time period involved, and contemplate staged ratings where warranted. See Fenderson v. West, 12 Vet. App. 119 (1999). 

The RO granted service connection for lichen planus and nummular eczema in an October 2005 rating decision. A noncompensable rating was assigned. During the pendency of the appeal, a September 2007 rating decision increased the Veteran's rating to 10 percent, effective July 10, 2007. Thus, the Board will consider both whether the Veteran is entitled to a rating in excess of 10 percent, and whether he is entitled to a compensable rating prior to July 10, 2007.

Based on a review of the record, the Board finds that a 10 percent rating for lichen planus and nummular eczema is warranted throughout the entire appeal period. 

The Board initially notes that the rating criteria for skin disorders were revised, effective October 23, 2008. However, these amended regulations were specifically effective for applications for benefits received by the VA on or after October 23, 2008, although a claimant may request consideration under the amended criteria. See 73 Fed. Reg. 52710 (October 23, 2008). As the Veteran's claim was filed prior to October 23, 2008, and the Veteran has not requested consideration under the amended regulations, his disability is rated under the 'old' rating criteria.

The Veteran's service-connected lichens planus is evaluated under the provisions of Diagnostic Codes (DCs) 7806-7822. According to DCs 7806 and 7822, a 10 percent evaluation is warranted in cases where at least 5 percent, but less than 20 percent, of the entire body, or at least 5 percent, but less than 20 percent, of exposed areas are affected, or; systemic therapy or intensive light therapy was required for a total duration of less than six weeks during the past 12-month period. A 30 percent evaluation is assigned in cases where 20 to 40 percent of the entire body or 20 to 40 percent of exposed areas are affected, or; systemic therapy or intensive light therapy was required for a total duration of six weeks or more, but not constantly, during the past 12-month period. A 60 percent evaluation is assigned in cases where more than 40 percent of the entire body or more than 40 percent of exposed areas are affected, and constant or near-constant systemic medications or intensive light therapy were required during the past 12- month period

According to DCs 7806 and 7822, eczema and papulosquamous disorders, including lichen planus, may be evaluated as disfigurement of the head, face, or neck (under DC 7800) or scars (under DC 7801-7805), depending upon the predominant disability. 

A Compensable Rating Prior to July 10, 2007

The Board will first determine whether the Veteran is entitled to a compensable rating prior to July 10, 2007. Based on the evidence demonstrating no disfigurement of the head, face or neck, DC 7800 is not for application. In order to receive an increased rating under DC 7801, there must be evidence that there are scars, other than the head, face, or neck that are deep or that cause limitation of motion. Although evidence of record reflects that the Veteran has scars, other than on his head face or neck (e.g., shins), the evidence does not demonstrate that they are deep or cause limited motion. A June 2005 VA examination report indicated that the scars were not deep or caused limitation of motion. As such, an increased rating under DC 7801 is not for application. 

The evidence also fails to demonstrate that the scars encompassed an area or areas of 144 square inches (929 sq. cm.). An increased rating under DC 7802 is additionally not for application. Further, increased ratings under DC 7803 for superficial and unstable scars or under DC 7804 for superficial painful scars is not for application as the Veteran's scars were noted to be stable and not painful on examination. See June 2005 VA examination. 

With respect to diagnostic codes 7806 and 7822, the Board has considered a July 2004 treatment record that noted that the Veteran had dry skin. Medications associated with his skin were not noted. An October 2005 private treatment record noted papules on his forearm and shins. The Veteran complained of dry skin at an April 2006 private treatment visit. Dry skin was also reported in July 2004, September 2004, December 2004, and November 2006 private treatment records. The Veteran reported a rash at a January 2007 private treatment record. No skin disorder was diagnosed at that time. Upon VA examination in June 2005, the Veteran reported chronic lichen planus and nummular eczema occurring on the shins and on the hands and forearms. He reported that it was progressive, occurring more on the shins. The Veteran stated that he used corticosteroid creams but did not use light therapy. He indicated that he applied cream every day. He described his symptoms as itching, but reported no systemic symptoms. Upon physical examination it was noted that there were no lesions or scars on the arms. The affected areas were mainly in the anterior shin, bilaterally, with a total area of 2 percent. 

At a July 2007 VA examination, completed on July 10, 2007, the first day his disability is rated at 10 percent, the Veteran reported using Lidex cream and ammonium lactate once daily for the last 12 months. It was noted that the Veteran had a rash covering about 5 percent of his entire body. Nothing in this record suggests that his skin problems spontaneously worsened on the day of the July 10, 2007, VA examination. In fact, the Veteran reported that his condition was constant now and was progressively getting worse since its onset. 

As noted above, a rating of 10 percent is warranted under DCs 7806 and 7822 if at least 5 percent, but less than 20 percent, of the entire body, or at least 5 percent, but less than 20 percent, of exposed areas are affected, or; systemic therapy or intensive light therapy was required for a total duration of less than six weeks during the past 12-month period. 

The Veteran indicated in his March 2007 substantive appeal that the VA examination in June 2005 occurred at a time when his skin was healing, and that his condition comes and goes. He indicated that his condition is much more severe during the winter months and definitely lasts more than 6 weeks during a 12 month period. Given that the Veteran has reported that his disability fluctuates in degree of disability, depending on the time of year, the Board is required to address the frequency, duration, and outbreaks of skin disease exacerbations and to consider the skin disorder at those times when it was most disabling during the relevant period. Ardison v. Brown, 6 Vet. App. 405 (1994); Bowers v. Derwinski, 2 Vet. App. 675 (1992). 

The Board acknowledges the Veteran's June 2005 VA examination report reflected that the Veteran's skin disorder only affects 2 percent of his body, which fits the criteria for a noncompensable rating under these diagnostic codes. However, when examined in July 2007, between 5 to 6 percent of his body was covered. Private treatment records between his June 2005 and July 2007 VA examination noted consistent complaints of dry skin, although the percentage of skin affected was not noted in the reports. Based on the Veteran's private treatment records, his testimony and statements, and resolving all doubt in his favor, the Board concludes the Veteran's skin disorder, at its most disabling, prior to July 10, 2007, more closely approximated the criteria for a higher rating of 10 percent. 

Having determined that the Veteran is entitled to a 10 percent rating prior to July 10, 2007, the Board will consider whether he is entitled to a higher evaluation for the entire time on appeal. 

A Rating in Excess of 10 Percent for the Entire Period on Appeal

The Board has reviewed the evidence of record and finds that the evidence does not support a rating in excess of 10 percent for the entire period on appeal. 

A review of the evidence reflects that the Veteran's lichen planus and nummular eczema does not cause disfigurement of the head, face or neck. DC 7800 is not for application. 

In order to receive an increased rating under DC 7801, there must be evidence of scars, other than the head, face, or neck that are deep or that cause limitation of motion. Although evidence of record reflects that the Veteran has scars, other than on his head face or neck, the evidence does not demonstrate that they are deep or cause limited motion. A June 2005 VA examination report indicated that the scars were not deep or caused limitation of motion. A May 2011 VA examination report reflected no scarring or disfigurement. A November 2011 VA examination report noted multiple, superficial, scars scattered along both of the Veteran's anterior shins. However, it was noted that they were asymptomatic, not painful, not unstable, and did not cause limitation of motion. As such, an increased rating under DC 7801 is not for application. 

Moreover, the Veteran did not demonstrate scars encompassing an area or areas of 144 square inches (929 sq. cm.); therefore, an increased rating under DC 7802 is not for application. Further, increased ratings under DC 7803 for superficial and unstable scars or under DC 7804 for superficial painful scars is not for application as the Veteran's scars were noted to be stable and not painful on examination. See June 2005 VA examination, November 2011 VA examination. 

The Board will now consider whether an increased rating is warranted under DCs 7822 or 7806. Under these codes, a 30 percent evaluation is assigned in cases where 20 to 40 percent of the entire body or 20 to 40 percent of exposed areas are affected, or; systemic therapy or intensive light therapy was required for a total duration of six weeks or more, but not constantly, during the past 12-month period. 

At a June 2005 VA examination, the Veteran reported that he applied steroid cream twice a day. He reported that he did not use light therapy. It was noted that 2 percent of the Veteran's total area was affected. At a July 2007 VA examination the Veteran reported the use of Lidex cream once daily and ammonium lactate applied once daily. No systemic symptoms were noted. It was noted that the Veteran had a rash covering his dorsal aspect of his feet, ankles, and lower extremities, covering about 5-6 percent of his entire body. 

The Board has considered that the Veteran was prescribed Griseofulvin pills for his service-connected disability in July 2008, and continued taking the medication until approximately March 2009. Griseofulvin is neither a corticosteroid nor an immunosuppressive medication. Rather, the National Institutes of Health identifies Griseofulvin as being a systemic antifungal medication. http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000641/. Further, the overall evidence during the period on appeal reflects that the Veteran has only required topical creams or lotions to treat his service-connected lichen planus and nummular eczema. An August 2008 VA treatment record noted hypertrophic papules 1-4 mm on hands and larger 8 mm or so on pretibial skin. It was noted that his wrists and arms were clear. A March 2009 treatment record reflected that the Veteran was using steroid creams to the groin area. It was noted that he was now off Griseofulvin because the medication was not effective. A May 2009 VA treatment note indicated that the Veteran was asked to start Cellcept, an immunosuppressive drug, however the prescription never came and he never called. An October 2009 VA treatment record indicated there was no need for systemic therapy. A March 2010 VA treatment record noted that the Veteran was asked to start Cellcept but he had never filled the prescription. 

A June 2010 VA examination reflected that the Veteran was treated with topical creams. The VA examiner indicated that the Veteran's service-connected disability affected greater than 5 percent, but less than 20 percent of his exposed areas or total body. A May 2011 VA examination report reflected that the Veteran's lichen planus was first diagnosed in 1996 with manifestations on his bilateral legs and arms and was treated with oral corticosteroids. However, it was noted that since then he had similar attacks in 2002 and 2006 which required oral prednisone. It was noted that the Veteran had been using steroid creams episodically when he sees suspicious lesions on his lower extremities. The examination report indicated that these attacks were localized to his shins and that he also had scrotal itching for the past four years diagnosed as eczema. The Veteran reported applying an ointment to his shins. Physical examination reflected eczema on the scrotum covering 2 percent of his body. There was no evidence of lichen planus at time of examination. 

A follow-up VA examination in November 2011 reflected that the Veteran had been given prednisone in the winter of 2006 to counteract an outbreak of his lichen planus. Eventually the Veteran was sent to a dermatologist who informed him that the prednisone had spread his skin condition and he was given oral Griseofulvin for 9 months in 2007, in addition to steroid creams. The Veteran reported that his skin conditions are well controlled with the exception of his scrotum, where he still gets a rash. The Veteran reported using topical corticosteroids for 6 weeks or more, but not constant. Systemic corticosteroids or other immunosupprive medications were not noted, nor was light therapy. Physical examination reflected eczema covering less than 5 percent of the Veteran's total body area and a papulosquamous disorder covering less than 5 percent of his total body area. It was noted that the Veteran's nummular eczema covered about 1 percent of his total body area, and 0 percent of his exposed areas. His lichen planus was reported to cover about 1 percent of his total body area and 0 percent of his exposed area. The VA examiner indicated that the Veteran's lichen planus and nummular eczema had required intermittent systemic therapy in the past (several years ago) with prednisone or Griseofulvin, however, the Veteran had no systemic therapy in the past 12 months. 

The evidence during the period on appeal reflects that the Veteran's service-connected lichen planus and nummular eczema is predominately treated through the use of topical creams and ointments. Although oral medication was used for sporadic periods during the time on appeal, and for over six weeks, he was not administered corticosteroids or any other type of immunosuppressive drug. It has not been shown that 20 to 40 percent of his entire body or exposed areas have been affected by his service-connected disability. The use of intensive light therapy has not been demonstrated. Based on this evidence a rating in excess of 10 percent is not warranted.
 
In conclusion, the Board finds that the Veteran's disability picture, for lichen planus and nummular eczema, is not most nearly approximated by the next-higher 30 percent evaluation. Further, the Board finds that the clinical evidence, as detailed above, does not show distinct time periods exhibiting symptoms warranting staged evaluations. Consequently, the Board finds that a 10 percent rating throughout the rating period on appeal appropriately reflect the clinically established impairment experienced by the Veteran. As the preponderance of the evidence is against the claims, the benefit of the doubt rule is not applicable. See 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 54-56 (1990).

The Board has also considered the statements of the Veteran that his disability is worse. In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). 

Competency of evidence differs from weight and credibility. The former is a legal concept determining whether testimony may be heard and considered by the trier of fact, while the latter is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify").

In this case, the Veteran is competent to report symptoms of itchiness and the fluctuating nature of his skin disability because this requires only personal knowledge as it comes to him through his senses. Layno, 6 Vet. App. at 470. He is not, however, competent to identify a specific level of disability of this disorder-according to the appropriate diagnostic codes. 

Such competent evidence-concerning the nature and extent of the Veteran's lichen planus and nummular eczema -has been provided by the medical personnel who have examined him during the current appeal and who have rendered pertinent opinions in conjunction with the evaluations. The medical findings (as provided in the examination reports) directly address the criteria under which these disabilities are evaluated. 

Based on the evidence, the Board finds that a rating in excess of 10 percent is not warranted for the Veteran's service-connected lichen planus and nummular eczema. 

The Board has also considered whether the Veteran is entitled to a referral for an extraschedular rating, which is a component of a claim for an increased rating under Bagwell v. Brown, 9 Vet. App. 337, 339 (1996). Although the Board may not assign an extraschedular rating in the first instance, it must specifically adjudicate whether to refer a case for extraschedular evaluation when the issue either is raised by the claimant or is reasonably raised by the evidence of record. Barringer v. Peake, 22 Vet. App. 242 (2008).

The Court recently clarified the analytical steps necessary to determine whether referral for such consideration is warranted. See Thun v. Peake, 22 Vet. App. 111 (2008). A determination of whether the available applicable schedular rating criteria are inadequate because they do not contemplate the Veteran's level of disability and symptomatology first must be made by the RO or Board. If the rating criteria are inadequate, the RO or Board must proceed to determine whether the Veteran exhibits an exceptional disability picture indicated by other related factors such as marked interference with employment or frequent periods of hospitalization. If such related factors are exhibited, then referral must be made to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for extraschedular consideration.

In this case, there has been no showing that the Veteran's disability picture could not be contemplated adequately by the applicable schedular rating criteria discussed above. The Veteran's lichen planus and nummular eczema was applied to the applicable rating criteria, general counsel opinions, and case law. Although the applicable criteria provide for higher ratings, the Board fully explained why a rating in excess of 10 percent for lichen planus and nummular eczema is not warranted. Given that the applicable schedular rating criteria are more than adequate in this case, the Board need not consider whether the Veteran's lichen planus and nummular eczema includes exceptional factors. Referral for consideration of the assignment of a disability evaluation on an extraschedular basis is not warranted. See Thun, 22 Vet. App. at 111; see also Bagwell v. Brown, 9 Vet. App. 337, 338-9 (1996); Floyd v. Brown, 9 Vet. App. 88, 96 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995).

Finally, although the Veteran has submitted evidence of a medical disability, and made a claim for the highest rating possible for his lichen planus and nummular eczema, he has not submitted evidence of unemployability, or claimed to be unemployable. In fact, at the Veteran's February 2008 BVA hearing he testified that he was currently employed. See BVA Hearing Transcript (T.) at 6. Additionally, a May 2009 VA treatment record reflected his continued employment. Therefore, the question of entitlement to a total disability rating based on individual unemployability due to a service-connected disability has not been raised. See Rice v. Shinseki, 22 Vet. App. 447 (2009); Roberson v. Principi, 251 F.3d 1378 (Fed. Cir. 2001).
 

ORDER

A 10 percent rating, but no more, for lichen planus and nummular eczema, prior to July 10, 2007, is granted, subject to the laws and regulations governing the award of monetary benefits. 

A rating in excess of 10 percent for lichen planus and nummular eczema is denied.


____________________________________________
MICHAEL A. HERMAN
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs